UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:15CV-00051-JHM**

**GREGORY SPILLER**                                                                             **PLAINTIFF**

**V.**

**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA**        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on a motion by Plaintiff, Gregory Spiller, for partial summary judgment [DN 19], and on a motion by Defendant, Travelers Property Casualty Company of America, for summary judgment [DN 21]. Fully briefed, this matter is ripe for decision.

**I.  STANDARD OF REVIEW**

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U .S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard the Court reviews the following facts.

## II. BACKGROUND

Plaintiff, Gregory Spiller, was employed by Chester Bross Construction Company to repave and repair sections of the Audubon Parkway, a four lane highway. On October 21, 2013, Plaintiff was part of a four-man work crew working in the right lane on one side of the parkway. He and co-worker Blake Akers were responsible for caulking overcuts along a 12-mile stretch of the parkway. The other two members of the crew were Brad Belak and Michael Winningham. Belak and Winningham were responsible for driving two Ford F-250 trucks owned by Chester Bross. Plaintiff was the passenger in Belak's truck and Akers was the passenger in Winningham's truck. Belak's truck towed an arrow board which had a flashing arrow warning traffic approaching from the rear to move to the left lane because there was construction work in the right lane. Winningham's truck towed a 24-foot flatbed truck which contained tools and materials.

On this day, Plaintiff caulked the overcuts that were closer to the left lane of the parkway, and Akers caulked the overcuts closer to the right shoulder of the parkway. Belak's truck advanced up the road behind the Plaintiff in the right lane of the parkway. Aker was followed by Winningham's truck which remained in the right shoulder. On October 21, 2013, after several

hours of work, the arrow board which was attached to the rear of Belak's truck was struck from behind by a 2008 Cadillac CTS sedan being driven by Paul Owens. The force of the collision caused Belak's truck to strike the Plaintiff.

As a result of the accident, the Plaintiff filed a claim against Safeco, the insurance carrier for Paul Owens, and recovered the policy limits of $100,000.00. Plaintiff also received workers' compensation. Plaintiff then filed an underinsured motorist claim against the Defendant, Travelers Property Casualty Company of America, which insured the Chester Bross truck in question. Defendant denied the underinsured motorist claim on grounds that Plaintiff was not an "insured" under the terms of the Defendant's policy with Chester Bross.

On March 3, 2015, the Plaintiff filed this action against Defendant in the Daviess Circuit Court seeking declaratory judgment that Plaintiff was an insured under the Travelers Commercial General Liability Policy and seeking damages for personal injuries in the form of underinsured motorist ("UIM") benefits. On April 7, 2015, Defendant filed a notice of removal of the action to this Court. Defendant answered and filed a counterclaim seeking a declaration that it owes no UIM coverage. On May 29, 2015, the Magistrate Judge bifurcated the proceedings between the declaratory judgment action and the action for recovery of underinsured benefits. The parties have now filed cross-motions for summary judgment on the issue of whether the Plaintiff is entitled to UIM benefits under his former employer's policy.

### III. DISCUSSION

#### A. Choice of Law

"'Federal courts hearing cases based on diversity must determine which state's law to apply to the case. This begins with an analysis of the choice-of-law rules of the forum state.'" Pogue v. Principal Life Ins. Co., 2015 WL 5680464, *4 (W.D. Ky. Sept. 25, 2015)(quoting

Wells Fargo Financial Leasing, Inc. v. Griffin, 970 F. Supp. 2d 700, 707 (W.D. Ky. 2013)). In the present case, the parties agree that Missouri law applies. Since the parties agree that Missouri law applies in this case, the Court need not engage in a lengthy choice of law analysis. See Wilton Corp. v. Ashland Castings Corp., 188 F.3d 670, 673 n. 2 (6th Cir. 1999)(noting that there is no need to undertake a choice-of-law inquiry when the parties agree on the applicable substantive law); Williams v. BASF Catalysts LLC, 765 F.3d 306, 316–317 (3d Cir. 2014)(holding that choice of law issues may be waived and noting that both parties agreed about the applicability of New Jersey law); Redmond v. ACE American Insurance Co., 2015 WL 3514690, *1 n. 2 (3d Cir. June 5, 2015)(declining to undertake a choice of law analysis since both parties agreed that New York law applied); Buckner v. United States, 2015 WL 5023079, *8 (N.D. Ohio July 1, 2015). Thus, the Court will apply Missouri law in construing the insurance policy.

### B. Contract Interpretation

The interpretation of an insurance policy is a question of law to be determined by the Court. Mendota Ins. Co. v. Lawson, 456 S.W.3d 898, 903 (Mo. App. 2015). Missouri courts read insurance contracts "'as a whole and determine the intent of the parties, giving effect to that intent by enforcing the contract as written.'" In re Brauer v. Bankers Life and Cas. Co., 2016 WL 4083480, *2 (W.D. Mo. Aug. 1, 2016) (quoting Thiemann v. Columbia Pub. Sch. Dist., 338 S.W.3d 835, 840 (Mo. App. 2011)). To determine the intent of the parties, "'the language in the contract is to be read according to its plain and ordinary meaning.'" In re Brauer, 2016 WL 4083480, *2 (quoting Mendota, 456 S.W.3d at 903). "If an ambiguity exists the policy language will be construed against the insurer." Id. "'An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language of the policy.'" Id. (quoting Fanning

4

v. Progressive Northwestern Ins. Co., 412 S.W.3d 360, 364 (Mo. App. 2013)). "'To test whether the language used in the policy is ambiguous, the language is considered in the light in which it would normally be understood by the lay person who bought and paid for the policy.'" In re Brauer, 2016 WL 4083480, *2 (quoting Blumer v. Automobile Club Inter-Ins. Exhcange, 340 S.W.3d 214, 219 (Mo. App. Mar. 29, 2011)).

The Missouri Underinsured Motorist Coverage endorsement of the Travelers Commercial General Liability Policy provides that Travelers

> will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "underinsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "underinsured motor vehicle."

(Missouri Underinsured Motorists Coverage at 1). The endorsement further provides that if the named insured is designated as "[a] partnership, limited liability company, corporation or any other form of organization," an insured is "[a]nyone 'occupying' a covered 'auto' . . . ." (Id.). "Occupying" is defined as "in, upon, getting in, on, out or off." (Id. at 3.) Based upon this policy language, the parties agree that for the purpose of claiming UIM benefits, the Plaintiff is only considered to be an insured if he was "occupying" the insured's vehicle at the time of the accident, which requires that he be "in, upon, getting in, on, out or off" of the vehicle in question. (Id.) Plaintiff contends that under Missouri law, he was "upon" the truck for purposes of policy language and, by reason thereof, he was "occupying" said truck and was an "insured" of the policy covering the truck.

### C. "Occupying" Defined

Missouri courts have consistently held that the words utilized in the policy's definition of

5

"occupying" are not ambiguous and are to be applied as commonly used and understood. Arbuthnot v. Northern Ins. Co. of New York, 140 S.W.3d 170, 172 (Mo. App. E.D. 2004); Loyd v. State Auto. Prop. & Cas. Co., 265 S.W.3d 901, 904–05 (Mo. App. 2008); Pope v. Stolts, 712 S.W.2d 434, 436 (Mo. App. E.D. 1986); State Farm Mut. Auto. Ins. Co. v. Farmers Ins. Co., 569 S.W.2d 384, 385 (Mo. App. 1978). Under Missouri law, when construing the definition of "occupying"

> [t]he cases generally fall into one of two categories where the results are generally consistent with a few exceptions. Id. The first category includes those cases where "the reason for leaving the vehicle and the claimant's activities after leaving the vehicle are directly related to the insured vehicle itself." Id. This category normally includes situations where a vehicle has malfunctioned or sustained damage and the claimant is trying to repair the damage, prevent further damage, or is giving or receiving information about the damage. Id. Because the injuries in this category of cases are resulting directly from the operation of the vehicle, courts have liberally construed the "occupancy" provision to allow coverage. Id. The second category includes those cases where the "vehicle is the means of transportation to the point where the claimant leaves the vehicle, and the reason for leaving the vehicle is unrelated to the vehicle itself." State Farm, 569 S.W.2d at 385. Courts have been much more rigid in requiring a claimant to prove he fits within one of the definitions of occupancy in these cases. Id.

Arbuthnot, 140 S.W.3d at 173. A discussion of four Missouri cases is helpful in addressing the parties' respective arguments.

In State Farm Mutual Automobile Insurance Co. v. Farmers Insurance Co., 569 S.W.2d 384 (Mo. App. 1978), Roger Hammett was beside the insured car, walking towards the car door when another car rear-ended the car. At the time of the impact, Hammett was completely outside the car and was not touching any part of the car; however, the force of the impact moved the car and caused it to collide with Hammett. Id. at 384-385. The court held that the case fell into the second category of cases, those in which the claimant's reason for being outside the automobile

is unrelated to the operation of the vehicle itself. The Missouri Court of Appeals found that "[w]e find no cases in the second category which have held that the 'upon' requirement is met where the claimant was not in contact with the vehicle immediately prior to the accident." Id. at 386. Therefore, the court determined the insured was not "occupying" the vehicle at the time of the accident and was not covered by the insurance policy. Id.

In Pope v. Stolts, 712 S.W.2d 434 (Mo. App. E.D.1986), the claimant was leaning under the hood with his stomach against the grill of the car and his legs against the bumper preparing to connect jumper cables to the car's battery. Id. at 435–36. The Missouri Court of Appeals found that under those circumstances the claimant was "upon" the car "because as that term is commonly used and understood it clearly encompasses the position he occupied in relation to the automobile." Id. at 438.

In Arbuthnot v. Northern Ins. Co. of New York, 140 S.W.3d 170, 172–74 (Mo. App. 2004), the plaintiff was working for the Missouri Machinery and Engineering Company and had been assigned to repair a fountain device in Union Station in St. Louis. At the time of the accident, the plaintiff was on the driver's side of the Missouri Machinery's service truck which was parked along the curb. At the time of the accident, the plaintiff had been retrieving tools or parts from the truck for use in repairing the fountain device. Plaintiff was discovered lying in the street seriously injured with the side compartment door panel detached and lying in the street nearby. Plaintiff's hair and other bodily remains were found on the truck. In discussing the two categories of cases discussed above, the Missouri Court of Appeals noted that the case did not clearly fit into either the first or second category. Relying on a factually similar case from the Supreme Court of Iowa, Simpson v. United States Fidelity & Guaranty Co., 562 N.W.2d 627, 631 (Iowa 1997), the Missouri Court of Appeals found that the plaintiff was an insured because

7

he was "occupying" his service truck. <u>Arbuthnot</u>, 140 S.W.3d at 172–74. Specifically, the policy in <u>Arbuthnot</u> defined "occupying" as "in, upon, getting in, on, out or off."  In finding that the plaintiff was occupying his service truck, the Missouri Court of Appeals concluded that

> the truck Plaintiff was using was specialized to carry parts and tools and had compartments that were accessible from outside the truck.  Plaintiff was repairing a fountain device and had returned to the truck to retrieve a tool or part. As evidenced by Plaintiff's bodily remnants and hair, which were found on the truck, Plaintiff was in close proximity to the truck when the accident occurred.
>
> We find that Plaintiff comes within the definition of occupancy because he was upon the truck as that term is commonly understood, and Plaintiff's purpose was related to the truck. Therefore, we find that based on the facts of this case, Plaintiff was "occupying" the truck within the meaning of the insurance policy.

<u>Id</u>. at 174.

Finally, as noted by the Missouri Court of Appeals in <u>Loyd v. State Auto Property & Casualty Co.</u>, 265 S.W.3d 901 (Mo. App. 2008), numerous other state courts have also addressed this issue.  Many courts have adopted a four-part test to determine if an individual is occupying an insured vehicle: (1) "there is a causal relation or connection between the injury and the use of the . . . vehicle;" (2) "the person asserting coverage must be in reasonably close geographic proximity to the vehicle, although the person need not be actually touching it;" (3) "the person must be vehicle-oriented rather than highway or sidewalk oriented at the time;" and (4) "the person must also be engaged in a transaction essential to the use of the vehicle." <u>Id</u>. at 905 (citing <u>General Accident Insurance Co. of America v. Olivier</u>, 574 A.2d 1240, 1241 (R.I. 1990)).  While not adopting the test *per se*, the Missouri Court of Appeals found that this test was consistent with Missouri cases that determine whether a vehicle is occupied. <u>Loyd</u>, 265 S.W.3d at 905.

At the time of the collision, the Plaintiff was approximately five feet to a car length from the front of Belak's truck. He was neither getting into the truck nor getting out of it.  Belak's

truck rolled gradually behind the crew as they worked. Plaintiff testified that he and other crew members always located themselves in front of the truck because it contained the trailer with the flashing arrow. Plaintiff maintains that the purpose of the flashing arrow is to divert traffic away from the truck and away from the workers as they work in front of the truck. Plaintiff testified that the truck contained tools (including his shovel), materials, and supplies which were retrieved from the truck from time to time.[1] Plaintiff was last inside Belak's truck approximately five minutes before the collision. Plaintiff also had been in Belak's truck during the day when the crew drove to the parkway that morning and when he and the crew returned periodically to ride the truck in order to go to the next site along the parkway if it was not within a reasonable walking distance.

Despite Plaintiff's argument to the contrary, the case does not clearly fit into the first category of cases recognized by Missouri courts. At the time of the accident, Plaintiff was not engaged in activity "directly related to the insured vehicle itself." Plaintiff was not involved in a situation where the vehicle had malfunctioned and he was attempting to repair the vehicle, attempting to prevent further damage to the vehicle, or giving or receiving information about the vehicle. See Arbuthnot, 140 S.W.3d at 173. Further, in contrast to the plaintiff in Arbuthnot, it is undisputed that Plaintiff was not returning to the truck to retrieve a tool or equipment at the time of the collision. Although he was using the flashing arrow light pulled behind the truck, he was not using the truck itself at the time of the accident. Instead, Plaintiff was standing on the parkway, bent over at the waist caulking an overcut on the roadway. Plaintiff's attention was focused on caulking the overcut and was not focused on the truck; therefore, the activity he was engaged in at the time was not "essential" to the use of the truck nor was it vehicle oriented. See

---

[1] Defendant argues that Belak's truck did not contain tools, materials, and supplies, but only contained Plaintiff's lunch box and water bottle.

e.g., Miller v. Mabe, 947 S.W.2d 151, 154 (Tenn. App. 1997)(while cablevision worker who was repairing downed cable wire had engine of van running, was using the vehicle's lights to warn oncoming traffic of his presence and to run a spotlight toward the area in which he was working, and had originally retrieved tools from the van, he was not occupying the van at the time of the accident); Younger v. Reliance Ins. Co., 884 S.W.2d 453 (Tenn. App. 1993)(power line repairman working in a ditch was not occupying the vehicle at the time of the accident).

Finally, the fact that Plaintiff was struck by the insured truck does not render the Plaintiff an occupant of the vehicle. The Missouri Court of Appeals in State Farm Mut. Auto Ins. Co. v. Farmers Ins. Co. specifically rejected a similar argument finding that "[w]e do not believe the word 'upon' can be stretched that far. To do so would mean anyone who is struck by a vehicle would be an 'occupant' regardless of his status." 569 S.W.2d at 386.

Based on these facts, the Court finds that Plaintiff was not "occupying" his work truck at the time of his accident, and therefore, was not covered under the underinsured motorist provision of his employer's policy.

## IV.  CONCLUSION

For the reasons set forth above, the motion by Plaintiff, Gregory Spiller, for partial summary judgment [DN 19] is **DENIED**, and the motion by Defendant, Travelers Property Casualty Company of America, for summary judgment [DN 21] is **GRANTED**.  A Judgment will be entered consistent with this Opinion.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

cc: counsel of record

October 5, 2016